# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# NORTHERN DIVISION

JAMES COOK,                              )
                                         )
       Plaintiff,                 )
                                         )
    v.                             )          No. 2:23-cv-00033 SEP
                                         )
CITY OF PIKE COUNTY, et al.,             )
                                         )
       Defendants.                )

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of Plaintiff James Cook, an inmate at the Moberly Correctional Center (MCC), for leave to commence this civil action without prepaying fees or costs. The Court grants the motion and assesses an initial partial filing fee of $79.03. Additionally, the Court will sever and dismiss, pursuant to Federal Rule of Civil Procedure, several of plaintiff's claims and defendants as improperly joined. Moreover, the Court will dismiss, pursuant to 28 U.S.C. § 1915, several of Plaintiff's claims and defendants from this action because the claims are frivolous and/or fail to state a claim for relief. Plaintiff's claims for false arrest and false imprisonment relating to the dates of June 25, June 29 and August 9, 2022, will be stayed pursuant to the Supreme Court case of *Wallace v. Kato*, 549 U.S. 384 (2007). To the extent Plaintiff's complaint contains any state law claims relating to the federal claims that are dismissed for failure to state a claim, those claims will also be dismissed, without prejudice, pursuant to 28 U.S.C. § 1367(c). Last, the Court will deny Plaintiff's motion for injunctive relief, as well as his motion for appointment of counsel.

## 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to his account. 28 U.S.C. § 1915(b)(2). The agency having custody

of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff has submitted an affidavit and a certified copy of his prison account statement for the six-month period immediately preceding the submission of his complaint. A review of plaintiff's account indicates an average monthly deposit of $395.17. Plaintiff has insufficient funds to pay the entire filing fee. Accordingly, the Court will assess an initial partial filing fee of $79.03.

## Legal Standard

This Court is required to review a complaint filed in forma pauperis and must dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556). Although a plaintiff need not allege facts in painstaking detail, the facts alleged "must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must assume the veracity of well-pleaded facts but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly,* 550 U.S. at 555).

This Court liberally construes complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Liberal construction" means that "if the essence of an allegation is discernible," the court "construe[s] the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even *pro se* complaints must allege facts that, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). The Court need not assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, nor must it interpret procedural

2

rules to excuse mistakes by those who proceed without counsel, *see McNeil v. United States,* 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff is currently incarcerated at Moberly Correctional Center (MCC) and brings this action alleging violations of his civil rights pursuant to 42 U.S.C. § 1983. He has named twenty-five (25) defendants in this action, including the following: City of Pike County[1]; Alex Ellison (Prosecutor); Milan Berry (Judge); Robert Embly (Louisiana City Police Officer); Conor Martin (Deputy Sheriff, Pike County); Steve Kolthoff (Deputy Sheriff, Pike County); William Harrison (Deputy Sheriff, Pike County)[2]; Charolette Doe (Pike County Office Manager); Corina Chalbach (Pike County Assistant Manager); Stephen Korte[3] (Sheriff, Pike County); John Doe I (Deputy Sheriff, Pike County); Richard Utley (Jailer, Pike County); Logan Phelps (Jailer, Pike County); Alan Weaver (Doctor, Pike County Jail); Debby Welch (Nurse, Pike County Jail); Tamra Lucas (Public Defender); Tasia Meglio (Public Defender); Christopher Terrell (Public Defender); Corey Anderson (Chief, Louisiana Police Department); Rebecca Lawson (private citizen); Amy Kerr (private citizen); Falisha Beaudreau (private citizen); Blake Sutton (private citizen); John Doe II (Deputy Sheriff, Pike County); John Doe III (Deputy Sheriff, Pike County).[4]  Plaintiff sues most of the individual defendants in their official and individual capacities, except defendants Lawson, Kerr and Beaudreau who are sued in their individual capacities only.

---

[1] The Court believes Plaintiff is referring to Pike County, Missouri, rather than "the City of Pike County."  The Court will instruct the Clerk to change the docket accordingly.

[2] The docket spells William Harrison's name as "William Harrisson."  The Court will instruct the Clerk to correct the spelling of William Harrison's last name.

[3] The docket spells defendant Stephen Korte's name as "Stephen Kolte."  The Court will instruct the Clerk to update the docket to reflect the proper spelling of defendant Korte's name.

[4] In general, fictitious parties may not be named as defendants in a civil action.  *Phelps v. United States*, 15 F.3d 735, 739 (8th Cir. 1994). However, it is possible to name Doe defendants where a defendant's name can be ascertained after reasonable discovery. *See Estate of Rosenberg by Rosenberg v. Crandell,* 56 F.3d 35, 37 (8th Cir. 1995) (finding that an action may only proceed against unknown individuals if the complaint makes sufficient allegations to ascertain their identities after reasonable discovery) (citing *Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985)). As this case will be stayed for an unknown period of time, the Court will dismiss the John Doe defendants without prejudice. Plaintiff may move to properly name these three John Doe defendants if at some point he is able to reopen this action after culmination of his state criminal cases.

The eighty-one (81) page complaint, which includes exhibits, advances multiple claims against the twenty-five (25) defendants concerning unrelated events that began with plaintiff's prior litigation in this Court[5] and ended with plaintiff's reincarceration in the Missouri Department of Corrections (MDOC). The Court will enumerate the claims in plaintiff's complaint separately.

**A. Plaintiff Alleges That He Was Subject to Violations of the Fourteenth Amendment (Due Process), Conspiracy Under 42 U.S.C. § 1983, Unlawful Arrest/Unlawful Imprisonment under the Fourth Amendment and Retaliatory Prosecution**

Plaintiff alleges that after his placement on Missouri parole in May of 2022,[6] he went home to Louisiana, Missouri where his ex-spouse[7] had rented a home.  He soon had disagreements with his next-door neighbors, Rebecca Lawson and her husband Corey Anderson. Plaintiff asserts that Anderson was an ex-police officer with both the Louisiana Police Department and the Pike County Sheriff's Office. He alleges that Anderson was related to Major Unknown Anderson at Northeast Correctional Center (NECC), with whom he had disagreements during his prior incarceration.

On June 20, 2022, Louisiana Police Officer Robert Embly and five Pike County Sheriff's Officers, who plaintiff refers to as the "Pike County Crew,"[8] reported to Plaintiff's home over one of the disagreements between Plaintiff and Corey Anderson.  Plaintiff claims that Embly attempted to arrest him at that time, but he had no cause to do so, thus, plaintiff was not arrested. Nonetheless, Embly told Plaintiff to get the "f-ck" out of Pike County when he left Plaintiff's residence that evening.  Plaintiff

---

[5] *See Cook v. Lockhart*, No. 2:20-CV-24 SRC (E.D. Mo.) (plaintiff's sued for deliberate indifference to his serious medical needs and the Court dismissed the action on July 22, 2022); *Cook v. Redington*, No. 2:20-CV-71 SRC (E.D.Mo.) (case was initially dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) on May 5, 2021, however, upon a motion for reconsideration, the Court changed the dismissal to one for "failure to file a complaint").

[6] Although plaintiff does not indicate the Missouri criminal case from which he was paroled, a review of Case.Net and the Missouri Inmate Locator shows that he was paroled after serving time relating to *State v. Cook*, No. 07SL-CR02704-01 (22nd Jud. Cir., St. Louis County Court). In that case, plaintiff pled guilty to five counts of robbery in the first degree, five counts of armed criminal action, felony resisting arrest and stealing a motor vehicle on June 19, 2009. *Id.* He was sentenced to seventeen (17) years of imprisonment. The case does not indicate the date plaintiff was paroled from MDOC. However, plaintiff's parole was revoked after his legal troubles in Pike County, Missouri, and he is now incarcerated in Moberly Correctional Center.

[7] At various times in the complaint plaintiff refers to his ex-spouse as his girlfriend. For continuity the Court will refer to her as plaintiff's girlfriend throughout the Memorandum and Order.

[8] Plaintiff states that the "Pike County Crew" is made up of the following defendants: William Harrison, Conor Martin, Steve Kolthoff; and John Does I, II and III.

claims that Anderson also told his girlfriend, "your boyfriend better be careful because my officers don't play fair."

Several days later, on June 25, 2022, Plaintiff was arrested by Officer Embly for driving with a revoked license. Plaintiff claims that the charge by Officer Embly was "false," and that he was unlawfully arrested. In fact, Plaintiff asserts that unnamed "Pike County Officials" could not find anything in their system that said Plaintiff's license to operate a motor vehicle was revoked. Plaintiff's assertion, however, does not align with Officer Embly's probable cause statement as set forth, *infra*.

Plaintiff was kept in the Pike County Jail overnight on the charge and released the next day. Plaintiff asserts that the prosecuting attorney, Alex Ellison, unlawfully asked for a warrant for his arrest on the charge, a $10,000 cash bond, which Judge Berry approved, along with Ellison's request that Plaintiff wear a GPS monitor. He was arrested on the warrant on June 29, 2022, by Officer Embly, and he was taken again to Pike County Jail. Plaintiff posted bond and was released with a GPS monitor. As set forth below in the recitation of Plaintiff's current criminal cases, Plaintiff was charged with the felony of driving while his license was revoked, misdemeanor careless and imprudent driving, misdemeanor failure to maintain financial responsibility and two counts of misdemeanor possession of a controlled substance. *See State v. Cook*, No. 22PI-CR00287 (45th Jud. Cir., Pike County Court).

Plaintiff asserts that between June and July of 2022, Rebecca Lawson and Corey Anderson and their friends continued to harass him and fill out false police reports against him. This caused police to come to his residence approximately five times attempting to arrest him. Plaintiff claims that he was not arrested on these occasions because his GPS monitor showed that he had not left his home. Plaintiff has not articulated any facts in his complaint relating to these purported "false police reports" filed against him by defendants Lawson and Anderson.

Plaintiff alleges that he eventually got permission from his parole officer to relocate to St. Louis, Missouri, to avoid problems with the community of Louisiana, Missouri. But before this could occur, his girlfriend was hospitalized in St. Louis. Unfortunately, Plaintiff's girlfriend allegedly had his car keys and the charger for his monitoring device with her. Plaintiff claims that on July 28, 2022, one day before Plaintiff was to appear in Court for a bond hearing regarding his GPS "going dead," Ellison requested a warrant for his arrest and Judge Berry approved it. Plaintiff felt the warrant for his arrest was unfair given that he had maintained daily contact with his parole officer. According to Plaintiff, the warrant had a cash bond of $50,000 for the charge of driving while revoked.

On or about August 9, 2022,[9] Plaintiff made a complaint to the Pike County Sheriff's Office because Officer Embly and "the Pike County Crew" came by his residence three times to arrest him on the outstanding warrant while his girlfriend was out in front of their rental property talking with the owner of the residence.  Later, on or about August 9, 2022, Officer Embly and "the Pike County Crew" kicked down the front door and arrested both Plaintiff and his girlfriend "in response to the complaint they made."  After that time, Plaintiff and his girlfriend were evicted from their rental home.

Plaintiff appeared in front of Judge Berry for his preliminary hearing, and he was told by his counsel that Ellison was threatening to charge him with three additional felony charges, including one for lost GPS equipment.  Plaintiff claims that the charges were going to be included if he failed to waive his preliminary hearing.  Plaintiff did not waive the hearing, and he was taken to Pike County Jail.

**B.  Plaintiff Alleges That Defendants Failed to Protect Him at the Pike County Jail and Were Deliberately Indifferent to His Serious Medical Needs in Violation of the Fourteenth Amendment**

On September 12, 2022, Plaintiff was informed by another inmate at Pike County Jail that Officer Embly had approached that inmate and offered to release him if he would "shut Cook up." Plaintiff complained to unnamed Jail staff about his safety on September 12th, 13th, 14th and 15th. However, he states that his requests to be removed to a different pod in the Jail were ignored and then denied by the Jail's administration and/or office managers including Charolette Unknown and Corina Chalbach.

Plaintiff asserts that he was "attacked" inside his cell at the Pike County Jail on September 15, 2022, and "left there unconscious" by Pike County Jailers Richard Utley and Logan Phelps after they purportedly removed a weapon from the cell.  Plaintiff does not indicate what his injuries were after the attack or if he requested medical care.  Plaintiff also fails to indicate what events led up to the attack, who allegedly attacked him and if this the same person who purportedly made the threats against plaintiff.

Plaintiff states that "later that 15th day of September 2022, Plaintiff awoke naked inside of his cell, where he believes he was sexually assaulted by his attacker."  The Court is unsure if Plaintiff

---

[9] In the complaint, Plaintiff insists that he was arrested on the "failure to appear" warrant on or about August 4, 2022, by Officer Embly and the Pike County Crew.  However, the warrant was not issued until August 3, 2022, and the date of return on the warrant indicates it was served on August 9, 2022.  The Court will assume, as a result, that plaintiff is merely mistaken as to the date on which he was arrested.

suffered a second attack after the first attack, or if his claims of sexual assault relate to the first attack. Moreover, Plaintiff has not indicated if he reported these events or what occurred relative to this attack or after the attack.  He merely indicates that defendant Corina Chalbach told an unknown person not to move him from his cell.  Plaintiff does state, however, that his grievances regarding the incident were ignored or unanswered by Sheriff Stephen Korte.

Plaintiff complains of a second "failure to protect" incident which purportedly occurred on or about February 24, 2023. He asserts that he observed Deputy Martin conferring with an inmate in his pod, inmate Dylan, who was one of his noted enemies. That evening, plaintiff and inmate Dylan had an altercation. Plaintiff, however, has failed to explain what this alleged altercation entailed. Plaintiff claims that inmate Dylan was spotted wearing a shirt covering his face and watching plaintiff as if he was waiting to attack. Plaintiff does not provide any additional information relative to this altercation. And he provides no information as to why he believes this "incident" should be attributable to Deputy Martin.

**C. Plaintiff Alleges That He Was Subjected to Excessive Force and Deliberate Indifference to His Medical Needs in Violation of the Fourteenth Amendment, as well as Conspiracy under 42 U.S.C. § 1983. Plaintiff Also Alleges Violations of His First Amendment Right of Access to Courts and Sixth Amendment Right to Counsel**

Plaintiff complains that when he appeared in front of Judge Patrick Flynn for a bond hearing on the driving while revoked charge on September 19, 2022, he found out that he was also being charged with a possession of a controlled substance/delivery of a controlled substance. He states that he was never told about the new criminal charge until he went to court that day, and he believes the failure to notify him of the charge was an abuse of the legal process. [10]

Plaintiff next asserts that he was attacked by Deputy William Harrison of the Pike County Sheriff's Office on the evening of October 4, 2022, while he was attempting to post bail.  He asserts that he was in the Pike County Jail hallway and was told by Deputy Pliler that his bail had been paid but was waiting on a hold for a possession/delivery charge to be cleared.  When plaintiff continued to inquire

---

[10]Plaintiff claims that Judge Patrick Flynn, who is not a defendant in this action, added a charge of possession to the indictment on or about September 19, 2022, during his arraignment. Plaintiff refers to this as an "abuse of the legal process." First, as noted, Judge Flynn is not a named defendant. Even if he was, he is entitled to absolute judicial immunity in this action as explained, *infra*. Additionally, the record indicates that the charge of possession was in the criminal complaint filed on June 28, 2022. *See State v. Cook*, No. 22PI-CR00287 (45th Jud. Cir., Pike County Court).

into the allegations about why he was not being released, several sheriff's deputies came into the hallway.  Plaintiff claims:

> Deputy Harrison ran violently towards Plaintiff and attacked Plaintiff with a combination of punches to Plaintiff's face…Plaintiff was eventually tackled to the ground by all five deputies, in which he suffered real severe injuries to the neck, back, and groin region.  It should be noted that Plaintiff was continually denied access to medical care for his injuries.

Plaintiff claims that Pike County Jail has a policy, practice, and custom of not giving inmates notice of pending warrants until the inmate posts bail.  He claims that this policy has led plaintiff to being harassed by deputies and is responsible for his injuries.

Plaintiff states that later, on October 5, 2022, he was served an arrest warrant on the possession/delivery charge, and he was also given a subsequent warrant for resisting arrest and assault on law enforcement.  Plaintiff alleges that Deputy Martin and the other participating deputies wrote false reports making it seem like plaintiff was the aggressor.  On October 12, 2022, when plaintiff appeared in front of Judge Berry, he was given two additional warrants for his arrest for harassment allegations from June and July of 2022 relating to complaints from his neighbors.

On October 20, 2022, Plaintiff's parole officer recommended revocation of his parole, due to the accumulated charges.  He was informed by his parole officer that Deputy Martin contacted her and told her that contraband found in the Jail's parking garage belonged to Plaintiff and that "Plaintiff had indeed acted out of aggression and attacked the officers in the Jail's hallway."

Plaintiff complains that during his several court appearances in Pike County he has not properly been represented by counsel. He was purportedly told by Judge Berry that the public defenders refused to represent him, while he was told by Judge Flynn that it appeared as though he had waived his right to counsel. Public Defender Tamra Lucas attempted to tell Judge Flynn that plaintiff had filled out a defective form seeking counsel, while at the same time telling plaintiff that he could not receive representation from the Missouri Public Defender's Office because he had previously retained his own counsel.  Plaintiff complains that this had led to him not being represented by counsel in several of his court appearances and having standby counsel in others.

Plaintiff complains that his legal mail from Tamra Lucas was opened by someone at the Pike County Jail on October 24, 2022, outside of his presence.  It is not clear what was in the envelope sent to

Plaintiff by Lucas, nor is it clear if Lucas represented Plaintiff at that time, as Plaintiff admits he was sent mail on October 25, 2022, indicating that the public defender's office did not yet represent him.[11]

**D.  Plaintiff Alleges Unconstitutional Conditions of Confinement in Violation of the Fourteenth Amendment Relating to His Stay at the Pike County Jail**

Plaintiff alleges that during the months of November and December of 2022, he was placed in a holding cell at the Pike County Jail, "due to continued conflicts with the inmate population." Plaintiff does not explain why he was having conflicts with the other inmates at the Pike County Jail, or what the purported conflicts were, he merely states that the "conflicts" were "believed to be sanctioned" by Deputy Martin and Corina Chalbach. Plaintiff complains that he was forced to sleep on the floor of a holding cell, with no running water, and the cell had no heat. In fact, plaintiff claims that Deputy Martin and Corina Chalbach would "cut the air-conditioning" on, while the rest of the facility had "steaming hot heat." Plaintiff asserts that he repeatedly asked to have his heat on or be placed in a better environment, but his requests were denied. He even claims that there was a medical cell with heat, running water, and bunks next to the cell he was being kept in, but he was not allowed to move to that cell. Plaintiff was told by "staff members," including Corina Chalbach, Deputy Martin and Charolette Unknown, that the decision not to move him was up to Charolette Unknown and Corina Chalbach.

**E.  Plaintiff Alleges Deliberate Indifference to His Medical Needs in Violation of the Fourteenth Amendment, Between August 2022 and December of 2022 at Pike County Jail**

Plaintiff claims that from August 2022 through December 2022, he made continued requests for medical assistance, but he was denied that assistance by Nurse Debby Welch and Dr. Alan Weaver at the Pike County Jail.

Plaintiff alleges that he suffers from hemorrhoids, and he had his medications for that condition delivered to the Jail, including: ointments, suppositories and fiber tablets.  He states that he explained to Nurse Welch that his condition was worsening without access to his medications, but she and Dr. Weaver continued to deny him access to his medications.

---

[11] From Plaintiff's assertions in his complaint, it is clear that he has his own thoughts on litigating his criminal cases, and he continues to file pro se motions in his cases even when represented by counsel.  This has led to disagreements with assigned counsel because plaintiff does not believe that counsel is adequately representing him if they fail to take up his pro se motions.

Although Nurse Welch saw him on October 6, 2022, for neck, back and groin pain after his altercation with staff on October 5, 2022.  She prescribed him Tylenol for the injuries and swelling, however, plaintiff claims he never received the medication.

Plaintiff alleges that at an undisclosed time period he was told by Deputy Martin at the Pike County Jail that the doctor would not approve his prescription to treat H. Pylori, which he had been diagnosed with in February 2023, at Fulton Reception and Diagnostic Center.

On October 17, 2022, Plaintiff claims that he "pleaded with defendant Welch to see him, because he was in so much pain from the assault of the deputies that Plaintiff had to urinate in a cup because he couldn't get out of bed."  Plaintiff states that Welch saw everyone else in the pod that had a medical complaint but did not see Plaintiff.  On October 20, 2022, Plaintiff saw Welch in the hallway and asked her why she had not called him for sick call.  Welch purportedly admitted to Plaintiff that she had no plans to do so.  Plaintiff claims that he did not see a doctor for his conditions/injuries at any time he was in the Pike County Jail.

For relief in this action, plaintiff seeks monetary damages and injunctive relief.

### Plaintiff's Missouri Criminal Cases Pertinent to the Present Case

#### A.  June 2022 Pike County Case

On June 28, 2022, a criminal complaint was filed against plaintiff in Pike County Court charging plaintiff with the felony of driving while his license was revoked, misdemeanor careless and imprudent driving, misdemeanor failure to maintain financial responsibility and two counts of misdemeanor possession of a controlled substance.  *See State v. Cook*, No. 22PI-CR00287 (45th Jud. Cir., Pike County Court).[12]  A probable cause statement was filed by Officer Robert Embly of the Louisiana Police Department in support of the complaint and stated, in pertinent part:

> On 25 June 2022, at approximately 2233 hours, I Officer Robert Embly DSN #319 stopped a vehicle for driving with no headlights on Highway 54 and Franfod Rd. I spotted the white Chevy SUV driving west on Highway 54 at 54 and Wehrman Street. I turned around on the vehicle activating my emergency equipment and conducting a

---

[12] Plaintiff's underlying state court cases were reviewed on Case.net, Missouri's online case management system. The Court takes judicial notice of these public records.  *See Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007) (explaining that district court may take judicial notice of public state records); *Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (stating that courts "may take judicial notice of judicial opinions and public records"); and *Stahl v. U.S. Dept. of Agriculture*, 327 F.3d 697, 700 (8th Cir. 2003) ("The district court may take judicial notice of public records and may consider them on a motion to dismiss").

traffic stop. The white Chevy was bearing Ill. License plate CV61952, belonging to Smith, Adriana on a 2016 Chevy Traverse.

I approached the driver side, making contact with the driver Cook, James L. DOB [ ] . I asked Cook for his driver license and Insurance. Cook could not find the insurance card and produced on for a 2016 Chevy Silverado, and a 2007 GMC both expiring March 6th 2022. Cook handed me an ID card only for his driver's license. I asked Cook if he had a license and Cook said "no, it's revoked."

I had a female show up on scene and said she was the owner of the car, Smith Adriana DOB [ ] she also could not show valid proof of insurance.

I walked back to my car to validate the ID card for Cook and it came back that he was revoked. I had Pike County Joint Communications (PCJC) run a criminal history to find out how many priors Cook had. Cook had 5 priors for Driving While Revoked.

Cook was then placed in mechanical restraints and placed in custody.

I explained to Cook that I could smell marijuana in the car and Cook said if there is anything in there it did not belong to him. Cook is a caution 2 indicator (known to be violent) and had a very lengthy criminal history.

The Canine was deployed and alerted on the passenger side front door of the car. Under the passenger front seat is where the .03 grams rolled in a brown leaf was located and had already been used showing as one end was burnt.

Cook was transported to Pike County Detention Center by Officer Randy Mobley DSN #311.

Plaintiff was served with a warrant for his arrest on July 1, 2022, and bond was set at $10,000. *Id.* Although Plaintiff posted bond on July 7, 2022, a GPS violation was reported on July 27, 2022.[13] A motion to revoke Plaintiff's bond was made by Prosecutor Ellison on July 28, 2022, and a notice of hearing was filed for July 29, 2022. When Plaintiff failed to appear at the hearing on that date, a warrant was issued for his arrest on August 3, 2022. It appears that Plaintiff was served with the warrant on August 9, 2022.

---

[13] Plaintiff's probation officer Kathleen Flowerree filed a GPS Violation Report on July 27, 2022, indicating that plaintiff was in violation of the bond conditions and GPS rules. She reported that plaintiff's last known location was 5867 Lotus Street, St. Louis, Missouri 63112. Additionally, he allowed his GPS monitor to go dead and as a result, he was no longer being monitored. Ms. Flowerree indicated that she spoke to plaintiff by phone on July 26, 2022, and directed him to charge the GPS bracelet before the battery died and he failed to do so. As a result, Ms. Flowerree reported plaintiff's violation to the Court.

An Information was filed against Plaintiff on filed on September 9, 2022, charging Plaintiff with the same charges as those in the criminal complaint, *State v. Cook*, No. 22PI-CR00287-01 (45th Jud. Cir., Pike County Court), and Plaintiff was formally arraigned on September 19, 2022. *Id.* The case was transferred to Ralls County on that same date. *See State v. Cook*, No. 22RL-CR00225 (10th Jud. Cir., Ralls County Court).  The case is currently set for trial on February 6, 2024.

**B. October 5, 2022, Pike County Case**

On October 5, 2022, a criminal complaint was filed against Plaintiff in Pike County Court charging plaintiff with the felony of delivering or concealing prohibited articles on premises.  *See State v. Cook*, No. 22PI-CR00446 (45th Jud. Cir., Pike County Court).  A probable cause statement was filed by Deputy Sheriff Conor Martin in support of the complaint and stated, in pertinent part:

> At approximately 1431 hours on September 16, 2022, I, Deputy Conor Martin, was in the sally port of the Pike County Jail. I was preparing to move the Pike County Sheriff's Office transport van, "Jail 1," out of the sally port. It should be noted, the transport van was in the sally port as I had left it there after returning from Pike County Memorial Hospital with Inmate James Cook. As I walked towards the garage door opener in the sally port, I felt something round underneath my boot. I lifted my boot, looked down at the ground, and observed what appeared to be a plastic wrapped green leafy substance. I put on a glove, picked up the plastic wrapped substance and walked back into the jail.

> As I walked from the sally port to the main control, in order to review camera footage of how the plastic wrapped green leafy substance got on the ground in the sally port, inmate Cook began yelling at me from his cell. I stopped to ask him what was wrong, and he was saying that he couldn't trust me and he wanted me to show him what was in my hand. I told him multiple times that I was not going to show him the substance that was in my hand, and that I was going to review camera footage. I then proceeded to main control and reviewed camera footage.

> While reviewing camera footage, I identified the time that I stepped on the plastic wrapped substance as 1431 hours. I watched footage from when I was leaving the sally port with Inmate Cook, at approximately 1156 hours on September 16, 2022, and did not observe the plastic wrapped substance on the ground. I then watched footage from when I pulled Jail 1 into the sally port, at approximately 1332 hours, after returning with inmate Cook from Pike County Memorial Hospital and did not observe the plastic wrapped substance on the ground. After parking Jail 1 and securing my firearm in a sally port lockbox, the footage shows me retrieving Inmate Cook from Jail 1. As Inmate Cook exited Jail 1, the plastic wrapped substance can be seen falling out of his jail issued orange shorts.

12

Plaintiff was served with a warrant for his arrest on October 6, 2022.  A grand jury indictment was filed on October 14, 2022, charging plaintiff with felony delivering or concealing prohibited articles on premises, felony resisting arrest and misdemeanor assault in the fourth degree. *See State v. Cook*, No. 22PI-CR00446-01 (45th Jud. Cir., Pike County Court).  Plaintiff was formally arraigned on November 7, 2022. *Id.*  The case was transferred to Ralls County on February 27, 2023. *See State v. Cook*, No. 23RL-CR00054 (10th Jud. Cir., Ralls County Court). The case is currently set for trial on February 6, 2024.

## C.  October 11, 2022, Pike County Case

On October 11, 2022, a criminal complaint was filed against Plaintiff in Pike County Court charging plaintiff with two counts of felony harassment. *See State v. Cook*, No. 22PI-CR00462 (45th Jud. Cir., Pike County Court).  A probable cause statement was filed by Officer Randall Mobley of the Louisiana Police Department in support of the complaint and stated, in pertinent part:

> One 7-21-22 Officers were dispatched to 314 Frankford for Harassment. Upon arrival I met with Rebecca Lawson and Corey Anderson and Amy Kerr. Parties were stating that James Cook is harassing there [sic] daughters, Lawson stated that her daughter Katie age 10 was playing outside in the front yard. Her next door neighbor Cook came outside pretended to wash his car and then trim his bushes, while doing this he kept his eye on Kaity [sic] the entire time. Lawson also stated this is not the first time it has happened. Now her child is afraid to go outside and play thinking something is going to happen to her.
>
> Corey Anderson states that his daughter Savannah age 16 was at work on 7-20-22 when Cook came into the store with his girlfriend. His girlfriend walked upstairs, Cook began staring at her while he was sitting. After a bit Cook came over and asked if she would assist in finding his girl. She took him upstairs and as they got to the top of the landing Cook requested to stop saying don't go any further his girl will get mad. A few moments later Cook comes to her and asked if she could get [him] a job where she works, she gives him the application and he has a note he wanted to give her. While there he told her she was a very beautiful young lady and he wanted to get to know her. Savanna [sic] informed Cook she was 16 years old an[d] not ok with his questioning. Cook continued saying how beautiful she was. She immediately left. He completed the application and when she picked it up he handed her a note. The contents in the not[e] say, "Attention Savannah first and foremost this is not a whatever, I think your [sic] a vibrant young lady and very beautiful lady. I'm grateful to admire your beauty! I could be a friend." Savanna [sic] stated that he is [barred] from the YMCA not allowed to return.
>
> Amy Kerr states that on 7-20-22, Cook followed her home from Hair Trenz and when she pulled into her driveway he pulled in behind her asking if he could park there saying he had a bad day and a lot is going on, she said no, he asked if they smoked, they said no. He sat there for a bit and drove off.

13

Amyiah Miller stated on 07-23-22, She pulled into the gas station Aerico. Cook pulled in beside her and both went inside, when they came out Cook asked if she had any Meth he could purchase, she said no he then asked if she had any others she could get it from she again said no. Cook then asked if she wanted to go for a ride and she stated no again. He kept on persisted so she got in her vehicle and left. Cook continued to follow her until she pulled into City Hall parking acting [as] if she were going to contact police. He then went the other way.

I met with Cook asked about Kaity [sic]. He said the acuzations [sic] are false he was outside washing his car and trimming his bushes. When asked about Savanna [sic], he said that was taken care of and he had no further comment.  I asked about other[s] Cook stated he was going over to talk with his accusers at the residence. I told him he is not allowed in there [sic] yard or he will be trespassing. Officers also informed Cook to keep his distance while in public and not have any conversations with them.

Plaintiff was served with a warrant for his arrest on October 13, 2022. A grand jury indictment was filed on October 14, 2022, charging plaintiff with the same charges as those in the criminal complaint. *See State v. Cook*, No. 22PI-CR00446-01 (45th Jud. Cir., Pike County Court). Plaintiff was formally arraigned on November 7, 2022. *Id.* The case was transferred to Ralls County on February 27, 2023. *See State v. Cook*, No. 23RL-CR00144 (10th Jud. Cir., Ralls County Court). The case is currently set for trial on February 6, 2024.

### D. January 2023 Pike County Case

On January 11, 2023, a criminal complaint was filed against plaintiff in Pike County Court charging plaintiff with the felony of delivering or concealing prohibited articles on premises. *See State v. Cook*, No. 23PI-CR00017 (45th Jud. Cir., Pike County Court). A probable cause statement was filed by Deputy Sheriff Conor Martin in support of the complaint and stated, in pertinent part:

Inmate James Cook knowingly possessed and concealed in the premises of Pike County Jail, which is a county jail, an item of personal property, a cell phone, that may have been used in such a manner to as to endanger the safety and security of the institution.

1. On December 15, 2022, at approximately 16:08 hours, Inmate James Cook can be seen on camera footage receiving a cell phone from another inmate.

2. Cell phones may be used to discreetly organize escapes, delivery of controlled substances, attacks on officers, and other dangerous occurrences, without the knowledge of the institution and its employees.

14

Plaintiff was served with a warrant for his arrest on February 28, 2023. A grand jury indictment was filed on March 10, 2023, charging plaintiff with the same charges as those in the criminal complaint. *See State v. Cook*, No. 23PI-CR00017-01 (45th Jud. Cir., Pike County Court). Plaintiff was formally arraigned on April 3, 2023. *Id.* The case was transferred to Ralls County on June 12, 2023. *See State v. Cook*, No. 23RL-CR00167 (10th Jud. Cir., Ralls County Court). The case is currently set for trial on February 6, 2024.

**Discussion**

## A. The Majority of Plaintiff's Claims Have Been Improperly Joined and Are Subject to Dismissal Pursuant to Federal Rule of Civil Procedure 21

The complaint asserts multiple unrelated claims against not one but twenty-five (25) defendants. That pleading practice is not allowed, especially in prisoner cases where litigants may be trying to avoid paying separate filing fees. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (district court should question joinder of defendants and claims in prisoner cases). Rule 20(a)(2) of the Federal Rules of Civil Procedure governs joinder of defendants, and provides:

> Persons . . .  may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Therefore, a plaintiff cannot join, in a single lawsuit, multiple claims against different defendants related to events arising out of different transactions or occurrences.

Unrelated claims against different defendants belong in different suits, partly to ensure that prisoners pay the required filing fees. The Prison Litigation Reform Act limits to three the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g).

Rule 18(a) of the Federal Rules of Civil Procedure governs joinder of claims, and provides:

> A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.

In other words, "[c]laim A against Defendant 1 should not be joined with unrelated Claim B against defendant 2." *George,* 507 F.3d at 607. "Unrelated claims against different defendants belong in different

suits, ... [in part] to ensure that prisoners pay the required filing fees - for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees." *Id.*

Federal Rule of Civil Procedure 21 permits severance of claims if they are improperly joined. The rule states, in pertinent part, that on motion or *sua sponte*, "the court may at any time, on just terms ... sever any claim against a party." Fed.R.Civ.P.21. Severance is appropriate when the claims are "discrete and separate," each capable of resolution without dependence or effect on the other. *See Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 442 (7th Cir. 2006) (citations omitted).

When determining whether to sever claims pursuant to Rule 21, district courts often consider (1) whether the issues sought to be severed are significantly different from one another and would require distinct evidentiary proof; (2) whether severance would promote judicial economy; and (3) whether either party will be unduly prejudiced by severance or its absence. *See Official Comm. of Unsecured Creditors v. Shapiro*, 190 F.R.D. 352, 355 (E.D. Pa. 2000) (citation omitted). These same considerations are frequently utilized when examining a motion to bifurcate claims under Rule 42(b). *See, e.g., Griffith v. Allstate Ins. Co.*, 90 F. Supp. 3d 344, 346 (M.D. Pa. 2014); *Goldstein v. Am. States Ins. Co.,* No. 18-CV-3163, 2018 WL 6198463, at *1-2 (E.D. Pa. Nov. 28, 2018) (citing *Shapiro,* 190 F.R.D. at 355).

Plaintiff's claims, which purportedly occurred after his arrests in June, July and August in 2022 in Pike County, should be severed from this action. Those claims are unrelated to the claims which purportedly arose in the Pike County Jail between September and December 2022. Accordingly, the Court will dismiss the following claims and defendants from this action as improperly joined under Federal Rule of Civil Procedure 21:  (1) claims against defendants Charolette Unknown, Richard Utley, Logan Phelps, Corina Chalbach, Sheriff Stephen Korte, Tamra Lucas, Tasia Meglio, Christopher Terrell, Alan Weaver and Debby Welch; (2) failure to protect claims; (3) deliberate indifference to his serious medical needs claims; (4) claims that the Sheriff failed to answer his grievances; (5) excessive force claims, both relating to the jailers and the Sheriff's Department employees; (6) policy claims against Pike County Jail for failing to provide inmates notice of warrants when they are subject to be released from custody; (7) access to courts claims; (8) Sixth Amendment right to counsel claims against the Missouri State court and Missouri State public defenders; and (9) unlawful conditions of confinement claims.

The Court, however, will review the following claims pursuant to 28 U.S.C. § 1915: (1) plaintiff's claims against defendants Alex Ellison, Milan Berry, Robert Embly, Conor Martin, Steve Kolthoff and William Harrison in their official capacities; (2) plaintiff's claims for false arrest and false imprisonment relating to his alleged arrests or attempted arrests, on or about June 20, 2022, June 25, 2022, June 29, 2022, July 28, 2022 and August 9, 2022 against Robert Embley and the Pike County Crew (Conor Martin, Steve Kolthoff and William Harrison); (3) plaintiff's claims for conspiracy against private actors pursuant to 42 U.S.C. § 1983 (Corey Anderson, Rebecca Lawson, Amy Kerr, Falisha Beaudreau and Blake Sutton); (4) plaintiff's claims against Judge Milan Berry; (5) plaintiff's claims against defendant Prosecutor Alex Ellison; (6) plaintiff's claims against the "Pike County Crew" (Conor Martin, Steve Kolthoff and William Harrison); and (7) plaintiff's claims against Pike County.

## B. Plaintiff's Claims Against the County, as well as Defendants in their Official Capacities, Are Subject to Dismissal

As noted above, plaintiff sued most of the defendants in their official capacities.[14] Plaintiff's official capacity claims against the remaining Pike County defendants – Alex Ellison, Milan Berry, Robert Embly, Conor Martin, Steve Kolthoff, William Harrison and John Doe Sheriff's Deputies - fail to state a claim and are legally frivolous.

An official capacity suit is a "way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). In other words, an official capacity claim against an individual is a claim "against the governmental entity itself." *White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). *See also Johnson v. Outboard Marine Corp.,* 172 F.3d 531, 535 (8th Cir. 1999) ("a "suit against a public employee in his or her official capacity is merely a suit against the public employer"); *Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.,* 813 F.3d 1070, 1075 (8th Cir. 2016) (a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit,* 460 F.3d 979, 986 (8th Cir. 2006) (a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent"). Thus, to prevail on an official capacity claim,

---

[14]Defendants Lawson, Kerr, Sutton and Beaudreau were sued in their individual capacities only. However, these defendants are private actors and cannot be sued in their official capacities under 42 U.S.C. § 1983.

the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly*, 813 F.3d at 1075.

In this case, plaintiff alleges all defendants are employed by Pike County – either the Court system, the Prosecutor's Office or the Sheriff's Office.  However, a county subdivision is not subject to suit under § 1983.  *See Ketchum v. City of West Memphis, Ark.,* 974 F.2d 81, 82 (1992) (a department or subdivision of local government is not a "juridical," or suable, entity under 42 U.S.C. § 1983).  *See also Ballard v. Missouri,* Case No. 4:13-cv-528-JAR (E.D. Mo. Apr. 22, 2013) (holding that "[p]laintiff's claims against the City of St. Louis Department of Public Safety, the St. Louis County Justice Center, the St. Louis City Justice Center, and MSI/Workhouse are legally frivolous because these defendants are not suable entities").

Even if Pike County is substituted as the employer, Plaintiff's official capacity claims would still be subject to dismissal.  Unlike a county subdivision, a local governing body can be sued directly under 42 U.S.C. § 1983.  *See Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 690 (1978).  However, a local government does not answer "for the injuries inflicted solely by its employees or agents," and is not subject to respondeat superior liability. *Monell,* 436 U.S. at 694; *see also Rogers v. King*, 885 F.3d 1118, 1122 (8th Cir. 2018).  Rather, a local government is narrowly liable for its own unconstitutional misconduct—as perpetrated through its employees—that falls under one of three categories: (1) an official policy; (2) an unofficial custom; or (3) a failure to train, "which is an extension of the same" and serves to evidence an unconstitutional policy or custom.  *Marsh v. Phelps County*, 902 F.3d 745, 751 (8th Cir. 2018).  Accordingly, rather than implicate the doctrine of respondeat superior, an official capacity claim serves only to address the conduct of a particular official in furtherance of his or her employer's unconstitutional policy or custom.  *See Miller v. City of St. Paul,* 823 F.3d 503, 506 (8th Cir. 2016).  Thus, to sustain a claim against defendants in their official capacities, plaintiff "must prove that the County itself caused the constitutional violation at issue." *Marsh,* 902 F.3d at 751.

Here, Plaintiff's complaint is devoid of any allegations that would state a claim of municipal liability.  Plaintiff does not allege that Pike County itself maintains a specific policy or custom which caused the violation of his constitutional rights relative to his arrests in June, July and August of 2022. *See Ulrich v. Pope Cty.,* 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a

18

policy or custom" that caused the alleged deprivation of plaintiff's rights).[15]   Rather, to the contrary, Plaintiff appears to allege that *constitutional policies* were in place but defendants knowingly disregarded those policies by their actions. Such allegations are insufficient to assert official capacity claims. (emphasis added)

As a result, Plaintiff's official capacity claims against defendants Alex Ellison, Milan Berry, Robert Embly, Conor Martin, Steve Kolthoff, William Harrison and John Doe Sheriff's Deputies, as well as any claims against Pike County, itself, are subject to dismissal.

### C. Plaintiff's Individual Capacity Claims

**1. Plaintiff's Claims for False Arrest and False Imprisonment on June 20, 2022 and the end of June/Beginning of July of 2022 Fail to State a Claim for Relief**
   **a.  June 20, 2022 Alleged Arrest**

On June 20, 2022, Louisiana Police Officer Robert Embly and five Pike County Sheriff's Officers known as the Pike County Crew, reported to Plaintiff's home over a disagreement between plaintiff and his neighbor, Corey Anderson.  Plaintiff claims that Embly attempted to arrest him at that time, but he had no cause to do so and as such, plaintiff was not arrested. At that time, Officer Embly told Plaintiff to get the "f-ck" out of Pike County when he left plaintiff's residence that evening. Additionally, Plaintiff claims that Anderson told his girlfriend, "your boyfriend better be careful because my officers don't play fair."  Because Plaintiff was not arrested or taken into custody on June 20, 2022, Plaintiff has no grounds to claim false arrest or false imprisonment under 42 U.S.C. § 1983.  This claim is subject to dismissal.

### b.  End of June 20, 2022/Beginning of July 2022 Alleged Arrests

Plaintiff asserts that between June and July of 2022, Rebecca Lawson and Corey Anderson and their friends continued to harass him and fill out false police reports against him.  This caused police to come to his residence approximately five times attempting to arrest him, although Plaintiff has not indicated the dates of these alleged incidents or what went on during those incidents.  Plaintiff claims that he was not arrested on these occasions because his GPS monitor showed that he had not left his home.

---

[15] The only purported policy or custom claim plaintiff makes in his complaint relates to the Pike County Jail allegedly not providing inmates notice of warrants when they are going to be released from custody. This claim is subject to dismissal pursuant to Federal Rule of Civil Procedure 21.

Again, plaintiff cannot sustain a cause of action for false arrest or false imprisonment on these allegations given that he was not subject to arrest in these instances.  His claims are subject to dismissal.

**2.  Plaintiff's Claims for False Arrest and False Imprisonment on June 25, 2022, June 29, 2022, and August 9, 2022**

On June 25, 2022, Plaintiff was arrested by Officer Embly for driving with a revoked license. *See State v. Cook*, No. 22PI-CR00287 (45th Jud. Cir., Pike County Court).  He was kept in the Pike County Jail overnight on the charge and released the next day.  Plaintiff asserts that the prosecuting attorney, Alex Ellison, unlawfully asked for a warrant for his arrest on the charge, a $10,000 cash bond, which Judge Berry approved, along with Ellison's request that plaintiff wear a GPS monitor.  In fact, as noted, *supra*, Missouri.Case.Net indicates that on June 28, 2022, a criminal complaint was filed against Plaintiff in Pike County Court charging Plaintiff with the felony of driving while his license was revoked, misdemeanor careless and imprudent driving, misdemeanor failure to maintain financial responsibility and two counts of misdemeanor possession of a controlled substance.  *See id*.  A probable cause statement filed by Officer Embly supported the criminal complaint.  *Id*.  Plaintiff was then arrested on a warrant as to the criminal complaint on June 29, 2022, by Officer Embly, and he was taken again to Pike County Jail. However, Plaintiff posted bond and was released with the GPS monitor.  When Plaintiff failed to show up for a court date, a warrant was issued for Plaintiff's arrest on or about August 5, 2022. *Id.*  According to Plaintiff, Officer Embly and "the Pike County Crew" arrested plaintiff on the warrant on or about August 9, 2022.[16]  Plaintiff believes that his arrest on August 9, 2022, for failure to appear was an unlawful arrest.

Although Plaintiff states that he was arrested unlawfully and he blames Officer Embly, Posecutor Ellison and Judge Berry for his circumstances, there is ample evidence in the record that Plaintiff was arrested lawfully on June 25, 2022, June 29, 2022, and August 9, 2022.  On June 29, 2022, and August 9, 2022, Plaintiff was arrested pursuant to valid arrest warrants. Additionally, the arrest warrant issued on June 29, 2022, was supported with a sworn probable cause statement relating to his June 25, 2022, arrest when he was pulled over for driving with a revoked license.  Moreover, there is no dispute that Plaintiff failed to appear in Court on August 3, 2022, and as a result, a warrant was issued for his arrest

---

[16]As noted above, plaintiff mistakenly indicates in his complaint that the date was August 6, 2022. However, the court record shows that the warrant was served on August 9, 2022.

which was served on Plaintiff on August 9, 2022.  To that end, Plaintiff is unable to assert that he was unlawfully detained or subject to false arrest at the Pike County Jail.

However, Plaintiff's state criminal case in *See State v. Cook*, No. 22PI-CR00287 (45th Jud. Cir., Pike County Court) (transferred to Ralls County Court as *State v. Cook*, No. 23RL-CR00144 (10th Jud. Cir., Ralls County Court)), is currently ongoing.  Because Plaintiff is seeking review of his false imprisonment and false arrest claims in this Court while his state criminal case is still ongoing, he may not have review of those claims until the culmination of his state criminal case and all appeals and post-conviction processes related to his criminal action have been completed.  *See Wallace v. Kato*, 549 U.S. 384 (2007).[17]  This Court is required to stay those claims pursuant to *Wallace v. Kato*.

The Court notes that in his complaint plaintiff also refers to claims relating to the August 9, 2022, arrest by Officer Embly and the Pike County Crew as "retaliatory," an "illegal search" and a violation of his freedom of speech and/or expression.  The Court finds that such claims are subject to dismissal. To prevail on their retaliation claim, the plaintiffs must show that "they engaged in protected [First Amendment] activity." *Quraishi v. St. Charles County*, 986 F.3d 831, 837 (8th Cir. 2021); *see Hoyland v. McMenomy*, 869 F.3d 644, 655 (8th Cir. 2017), abrogated on other grounds *by Nieves v. Bartlett*, —— U.S. ——, 139 S. Ct. 1715, 1722 (2019), as recognized in *Laney v. City of St. Louis*, 56 F.4th 1153, 1157 n.2 (8th Cir. 2023).  If they can make that showing, then the focus shifts to whether the officers "took [an] adverse action ... that would chill a person of ordinary firmness from continuing in the [protected] activity." *Hoyland*, 869 F.3d at 655 (citation omitted); *see Eggenberger v. West Albany Township*, 820 F.3d 938, 943 (8th Cir. 2016).  If they did, then the next hurdle is causation: was the First

---

[17] In *Wallace v. Kato*, the Supreme Court observed that it was common practice in § 1983 actions to stay the civil proceedings until the criminal case had ended. 549 U.S. 384, 393-94 (2007). The Court explained that where a plaintiff files a claim before he is convicted, and that claim is related to rulings that will likely be made in a pending or anticipated criminal trial, "it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended." *Id*. Otherwise, the Court and the parties are left to "speculate about whether a prosecution will be brought, whether it will result in conviction, and whether the impending civil action will impugn that verdict, all this at a time when it can hardly be known what evidence the prosecution has in its possession." *Id*. at 393 (internal citation omitted). Additionally, a stay or abstention until resolution of the criminal matter would be appropriate because a prisoner may not recover damages in a § 1983 suit where the judgment would necessarily imply the invalidity of his conviction, continued imprisonment, or sentence, unless the conviction or sentence is reversed, expunged or called into question by issuance of a writ of habeas corpus. *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994); *Schafer v. Moore*, 46 F.3d 43, 45 (8th Cir. 1995).

Amendment activity a "but-for cause" of the injury? *Nieves*, 139 S. Ct. at 1722 (quotation marks omitted).

In this case, Plaintiff has not alleged in his complaint that he engaged in speech against Embly and the Pike County Crew such that they could have been acting in retaliation against him. Rather, his interactions appear to have been with his neighbors, Corey Anderson and Rebecca Lawson, who were private actors. His failure to allege that he engaged in protected speech is fatal to his claim of First Amendment retaliation.

Similarly, plaintiff has not alleged in his complaint that a "unlawful search" occurred on August 9, 2022, at his home. Although he asserts that his door was kicked in when these defendants effected the warrant against him for "failure to appear," he does not indicate that defendants unlawfully searched his home without a warrant. For this reason, plaintiff's allegation of unlawful search is also subject to dismissal.[18]

### 3.  Plaintiff's Claims for Equal Protection Violations

Plaintiff claims that defendant Embly, the Pike County Crew, Prosecutor Ellison and Judge Berry violated his Fourteenth Amendment right to Equal Protection by "intentionally failing to investigate plaintiff's complaints of harassment." He also claims that by "treating plaintiff differently from his neighbors . . . and falsely arresting" him, his rights under the Fourteenth Amendment were also violated.  Last, plaintiff states that Prosecutor Ellison and Judge Berry violated his Fourteenth Amendment right to Equal Protection by acting in an unreasonable manner in his criminal cases, such as by subjecting him to court orders, bringing multiple prosecutions against him and allegedly misapplying statutes.

 "The Equal Protection Clause generally requires the government to treat similarly situated people alike." *Klinger v. Dep't of Corrs.*, 31 F.3d 727, 731 (8th Cir. 1994).  The dissimilar treatment of dissimilarly situated people does not violate equal protection.  *Id*.  As such, the first step in an equal protection case is determining whether the plaintiff has demonstrated that he was treated differently than others who were similarly situated.  *In re Kemp*, 894 F.3d 900, 909 (8th Cir. 2018).  Unless the plaintiff can make a threshold showing that he is similarly situated to those who allegedly received favorable

---

[18]His allegation of unlawful seizure is encompassed under false arrest/false imprisonment and subject to stay under *Wallace v. Kato*.

treatment, the plaintiff does not have a viable equal protection claim.  *Id*.  The plaintiff must also show that "the different treatment is based upon either a suspect classification or a fundamental right."  *Patel v. U.S. Bureau of Prison*s, 515 F.3d 807, 815 (8th Cir. 2008).

In this case, Plaintiff can be understood to express dissatisfaction with the way he was treated by Officer Embly, the Pike County Crew, Prosecutor Ellison and Judge Berry.  However, he fails to plead facts indicating that he was a member of a suspect class and/or permitting the inference that he was treated differently than others who were similarly situated. In other words, plaintiff has not indicated that another individual who was purportedly driving without a license and in possession of a controlled substance at the time was not taken into custody and then arrested for by Officer Embly on a criminal complaint, later an indictment, sworn under a probable cause affidavit. Furthermore, plaintiff has not suggested that he did not fail to appear at a court hearing resulting in a warrant for his arrest or that someone similarly situated to himself was not arrested under similar circumstances. As a result, plaintiff fails to plead a plausible equal protection claim.

### 4.  **Plaintiff's Claims Against the Private Actors and for Conspiracy Under § 1983**

Plaintiff has made significant claims for conspiracy between and amongst private actors Corey Anderson, Rebecca Lawson, Amy Kerr, Falisha Beaudreau, Blake Sutton, the Pike County Crew and Officer Embly of the Louisiana Police Department.  He specifically states that these Defendants acted together to "harm, harass, intimidate[e], threaten, and/or retaliate against [him], causing Plaintiff a loss of liberty, residence, place of business, the pursuit of happiness and rehabilitation, as well as mental, physical, emotional, social and financial injury"  Doc. [1] at 43.  Plaintiff additionally alleges that Defendants acted together to violate his due process rights under the Fourteenth Amendment by filing false police reports, criminal charges and false allegations against plaintiff.  *Id*. at 30.

To state a claim for relief under 42 U.S.C. § 1983, "a plaintiff must allege sufficient facts to show (1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010). Regarding the first element, a defendant can only be held liable pursuant to § 1983 for actions taken under color of state law. *Carlson v. Roetzel & Andress*, 552 F.3d 648, 650 (8th Cir. 2008). *See also Magee v. Trustees of Hamline Univ., Minn.,* 747 F.3d 532, 535 (8th Cir. 2014) (stating that § 1983 "imposes liability for certain actions taken under color of law that deprive a person of a right secured by the Constitution and laws of the United States"); *Sanders v. Sears, Roebuck & Co.,* 984 F.2d

23

972, 975 (8th Cir. 1993) (stating that § 1983 secures constitutional rights from government infringement, not infringement by private parties); and *Montano v. Hedgepeth*, 120 F.3d 844, 848 (8th Cir. 1997) (stating that pursuant to § 1983, "the challenged conduct must have been committed by one who acts under color of law").

When a private party acts under color of state law, it can be held liable under 42 U.S.C. § 1983. *Crumpley-Patterson v. Trinity Lutheran Hosp.,* 388 F.3d 588, 590 (8th Cir. 2004). However, a private party may only be held liable "if it is a willful participant in joint activity with the State or its agents." *Gibson v. Regions Fin. Corp.,* 557 F.3d 842, 846 (8th Cir. 2009). To state a claim against a private party under § 1983, the plaintiff "must allege, at the very least, that there was a mutual understanding, or a meeting of the minds, between the private party and the state actor." *Mershon v. Beasley*, 994 F.2d 449, 451 (8th Cir. 1993).

Plaintiff provides no factual support for any meeting of the minds or agreement between the private defendants on any of the dates he was arrested and/or taken to Pike County Jail. Plaintiff's bare assertion that there must have been a conspiracy to violate his rights because the Pike County Sheriff's Department employees "harassed him" and Louisiana Police Officer Robert Embly arrested him is not sufficient to state a conspiracy claim. *See Iqbal*, 556 U.S. at 678 (to state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements").

"To prove a § 1983 conspiracy claim against a particular defendant, the plaintiff must show: that the defendant conspired with others to deprive him or her of a constitutional right; that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and that the overt act injured the plaintiff." *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999). *See also Burbridge v. City of St. Louis, Missouri,* 2 F.4th 774, 782-83 (8th Cir. 2021) (explaining that "[t]o prevail on a [42 U.S.C.] § 1983 conspiracy claim, [the plaintiff] must show that (1) the defendants agreed to deprive him of his constitutional rights; (2) at least one of the alleged coconspirators engaged in an overt act in furtherance of the conspiracy; and (3) [the plaintiff] was injured by the overt act").

Plaintiff has failed to allege that there was a "meeting of the minds" between defendants to deprive him of his constitutional rights and that at least one of the state actors engaged with one of the private actors to deprive him of his constitutional rights. In fact, Plaintiff has not properly alleged an actual violation of his constitutional rights except for his assertion that Officer Embry and the Pike

County Crew subjected him to unlawful arrest.  However, Plaintiff has failed to detail in his complaint that any of the private actors had anything to do with the alleged arrests on June 25, June 29, and/or August 9, 2022.  Furthermore, Plaintiff has failed to indicate that any of the alleged complaints made by the private actors lead to an arrest of Plaintiff on those dates.[19]

Although Plaintiff claims that on June 20, 2022, Defendant Embly told him to get the "f-ck" out of Pike County when he left his residence after being there for an altercation between plaintiff and Anderson, this statement does not, by itself, provide evidence of a conspiracy.[20]  "Generally, mere verbal threats made by a state-actor do not constitute a [42 U.S.C.] § 1983 claim."  *Hopson v. Fredericksen*, 961 F.2d 1374, 1378 (8th Cir. 1992).  *See also McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) ("Verbal threats and name calling usually are not actionable under § 1983").  In other words, fear or emotional injury resulting "solely from verbal harassment or idle threats is generally not sufficient to constitute an invasion of an identified liberty interest."  *King v. Olmsted Cty.*, 117 F.3d 1065, 1067 (8th Cir. 1997).  To determine whether a constitutional line has been crossed, a court looks to factors such as "the amount of force that was used in relationship to the need presented, the extent of injury inflicted, and the motives of the state officer."  *Turner v. Mull*, 784 F.3d 485, 492 (8th Cir. 2015).  A "threat is redressable under § 1983 if it caused severe injuries, was grossly disproportionate to the need for action under the circumstances and was inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience." *Id*.

Nothing in defendant Embly's threat telling plaintiff to get the "f-ck" out of Pike County shows a conspiracy between he and the private actors in this instance.  Moreover, there is nothing in Embly's statement or in the actions described in Plaintiff's complaint attributed to Embly or the Pike County Crew that show these government actors were acting in concert with Corey Anderson or Rebecca

---

[19] For these same reasons, plaintiff also fails to state a claim for Missouri State law conspiracy. To do so, plaintiff would also have to show a meeting of the minds which he has failed to do. *See Oak Bluff Partners, Inc. v. Meyer*, 3 S.W.3d 777, 781 (Mo. banc 1999).

[20] Plaintiff additionally claims that Anderson told his girlfriend that same evening, "your boyfriend better be careful because my officers don't play fair." He claims that on this same date, he was also at the gas station where he encountered Rebecca Lawson and her friends, including Blake Sutton, a small group of females and an unidentified male. Plaintiff says someone in the group stated that he should "get the hell out of their neighborhood, or else." Rebecca Lawson purportedly then said in front of plaintiff, "it don't matter, because my husband knows the prosecutor. He'll be gone one way or the other."

Lawson or the other private actors to impede on Plaintiff's constitutional rights.  Thus, Plaintiff's conspiracy claims are subject to dismissal.

The Court notes that Plaintiff has also alleged an intentional infliction of emotional distress claim against private actors Lawson, Anderson, Kerr, Beaudreau and Sutton, as well as Officer Embly and the Pike County Crew.  He claims that these defendants are liable to him for intentional infliction of emotional distress for harassing him, intimidating him, threatening him, filing false reports against him, filing criminal charges against him, spreading false allegations, and contributing to the loss of his freedom.  The Court observes that intentional infliction of emotional distress in Missouri requires a Plaintiff to "plead extreme and outrageous conduct by a defendant who intentionally or recklessly causes severe emotional distress that results in bodily harm."  *Gibson v. Brewer*, 952 S.W.2d 239, 249 (Mo. banc. 1997).  In this case, Plaintiffs' have not presented facts showing "extreme and outrageous conduct" by any of the alleged defendants, and they certainly have not presented facts demonstrating "bodily harm."  As such, these claims are subject to dismissal.

### 5. Plaintiff's Claims Against Prosecutor Alex Ellison and Judge Milan Berry

Plaintiff's claims that Prosecutor Alex Ellison and Judge Milan Berry acted unlawfully in bringing *State v. Cook*, No. 22PI-CR00287 (45th Jud. Cir., Pike County Court) against him.  He has not presented any concrete allegations of unlawful behavior by these two Defendants, only asserting generally that they misapplied statutes against him, commenced an invalid prosecution, intentionally withheld discovery material, denied him counsel, impaired his ability to have a defense, denied him speedy trial rights and a sound defense strategy, and "intentionally utilized the legal system to harm and harass Plaintiff."

The claims against Prosecutor Alex Ellison and Judge Milan Berry are subject to dismissal. Prosecutors are immune from 42 U.S.C. § 1983 liability so long as the actions complained of appear to be within the scope of prosecutorial duties.  *Price v. Moody*, 677 F.2d 676, 677 (8th Cir. 1982). *See also Keating v. Martin*, 638 F.2d 1121, 1122 (8th Cir. 1980). Moreover, judicial immunity provides judges with immunity from suit, allowing them to exercise the authority with which they are vested, and to act upon their own convictions. *See Hamilton v. City of Hayti, Missouri*, 948 F.3d 921, 925 (8th Cir. 2020). "Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991).  This immunity applies even when the judge is accused of acting maliciously or corruptly.  *Pierson v. Ray*, 386 U.S. 547, 554 (1967).

26

*See also Woodworth v. Hulshof*, 891 F.3d 1083, 1090 (8th Cir. 2018) (stating that "judicial immunity is not overcome by allegations of bad faith or malice").  Accordingly, plaintiff's claims against defendants Alex Ellison and Milan Berry are subject to dismissal.

### Motion for Injunctive Relief

Plaintiff filed a document titled, "Memorandum of Law in Support of Plaintiff's Motion for Temporary Restraining Order and/or A Preliminary Injunction" on June 20, 2023. Doc. [4]. The Court will interrupt plaintiff's motion as one requesting injunctive relief.  Plaintiff filed a "Declaration in Support" of his motion for injunctive relief on that same date.  Doc. [5].

In the motion and declaration Plaintiff asserts that his life is "threatened with irreparable injury by having to attempt to defend against multiple prosecutions, while being deprived of discovery, adequate legal representation, a fair trial, and final disposition of the charges."  Plaintiff asserts that these issues constitute "continued deprivation of constitutional rights" such that he is entitled to "Federal intervention."  He claims that he has filed many motions with the Circuit Court that have been ignored, and he asserts that he has been denied a speedy trial.  He states that he fears for his safety in the Pike County Jail and under the Pike Circuit Court judicial system.

"A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 27 (2008).  In determining whether to grant a preliminary injunction, a district court applies "a flexible consideration of (1) the threat of irreparable harm to the moving party; (2) balancing this harm with any injury an injunction would inflict on other interested parties; (3) the probability that the moving party would succeed on the merits; and (4) the effect on the public interest." *St. Louis Effort for AIDS v. Huff*, 782 F.3d 1016, 1021 (8th Cir. 2015). *See also Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981).  "None of these factors by itself is determinative; rather, in each case the four factors must be balanced to determine whether they tilt toward or away from granting a preliminary injunction."  *West Pub. Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1222 (8th Cir. 1986).[21]

---

[21] The same standards are applied to both a request for a preliminary injunction and a request for a temporary restraining order. *See S.B. McLaughlin & Co. v. Tudor Oaks Condo. Project*, 877 F.2d 707, 708 (8th Cir. 1989) (affirming district court's application of *Dataphase* factors to a motion for a temporary restraining order).

In the prison context, a request for injunctive relief must always be viewed with great caution because "judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995). For an injunction to issue, "a right must be violated," and the court must determine whether "a cognizable danger of future violation exists." *Id*. at 521. Furthermore, the "danger must be more than a mere possibility." *Id*. Regarding the issue of whether a situation is ripe for injunctive relief, the Eighth Circuit has noted that courts "should not get involved unless either a constitutional violation has already occurred or the threat of such a violation is both real and immediate." *Id*. Plaintiff has the burden of proving that an injunction should be issued. *See Mgmt. Registry, Inc. v. A.W. Cos., Inc.*, 920 F.3d 1181, 1183 (8th Cir. 2019).

After reviewing the *Dataphase* factors, as well as the factual circumstances relevant to plaintiff's motion for injunctive relief, the Court is required to deny Plaintiff's motion. Plaintiff is no longer incarcerated in Pike County Jail nor is he subject to the Pike County Circuit Court's Judicial System. As such, his fears of retaliation, a biased judicial system, deprivation of his constitutional rights and irreparable injuries are both unfounded and moot. *See Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (stating that "a prisoner's claim for injunctive relief to improve prison conditions is moot if he or she is no longer subject to those conditions"). Plaintiff's cases that were formerly Pike County Circuit Court have all been transferred to Ralls County Court. Additionally, Plaintiff has been incarcerated in Moberly Correctional Center since the outset of this case. Thus, he has not been subject to the jurisdiction of the jailers in Pike County Jail, nor is he subject to the auspices of the Pike County Sheriff's Deputies. Because Plaintiff is no longer subject to the conditions for which he is seeking injunctive relief, the motion for preliminary injunction must be denied.

The Court must also decline to award Plaintiff's request for yet another reason. This Court cannot sit as an appellate court over Circuit Court decisions on the same matters, such as when to award Plaintiff new counsel, matters relating to evidentiary issues and/or discovery and whether the Circuit Court should hold hearings on plaintiff's pro se motions. *See Postma v. First Fed. Sav. & Loan of Sioux City*, 74 F.3d 160, 162 (8th Cir. 1996). To the extent Plaintiff has concerns over these issues, he should work with his appointed counsel in his Circuit Court cases to resolve these matters.[22]

---

[22]Plaintiff is represented by Assistant Public Defender Tuynh Trong Hoang in No. 23RL-CR00054. He is represented by Assistant Public Defender Christopher James Terrell in No. 22RL-CR00225.

**Conclusion**

Having thoroughly reviewed and liberally construed the complaint and the supplemental documents, the Court concludes that the Court will sever and dismiss, pursuant to Federal Rule of Civil Procedure, several of plaintiff's claims and defendants as improperly joined. Moreover, the Court will dismiss, pursuant to 28 U.S.C. § 1915, several of plaintiff's claims and defendants from this action because the claims are frivolous and/or fail to state a claim for relief. Plaintiff's claims for false arrest and false imprisonment relating to the dates of June 25, June 29 and August 9, 2022, will be stayed pursuant to the Supreme Court case of *Wallace v. Kato*, 549 U.S. 384 (2007). To the extent plaintiff's complaint contains any state law claims relating to the federal claims that are dismissed for failure to state a claim, those claims will also be dismissed, without prejudice, pursuant to 28 U.S.C. § 1367(c). Last, the Court will deny Plaintiff's motion for injunctive relief, as well as his motion for appointment of counsel.

**Motion for Appointment of Counsel**

Plaintiff has filed a motion for appointment of counsel.  Doc. [6].  The motion will be denied at this time. In civil cases, a pro se litigant does not have a constitutional or statutory right to appointed counsel. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013). *See also Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998) (stating that "[a] pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case"). Rather, a district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim…and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018). When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the complexity of the case, the ability of the pro se litigant to investigate the facts, the existence of conflicting testimony, and the ability of the pro se litigant to present his or her claim. *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).

After reviewing these factors, the Court finds that the appointment of counsel is not warranted at this time.  Plaintiff has demonstrated, at this point, that he can adequately present his claims to the Court.  Additionally, neither the factual nor the legal issues in this case appear to be complex. As such, Plaintiff's motion for appointment of counsel will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that the Clerk shall update the docket to reflect that the proper name

29

of defendant "the City of Pike County" is Pike County, Missouri.

**IT IS FURTHER ORDERED** that the Clerk shall update the docket to reflect the proper spelling of defendant Korte's name:  Stephen Korte, rather than Stephen Kolte.

**IT IS FURTHER ORDERED** that the Clerk shall update the docket to reflect the proper spelling of defendant William Harrison's last name.

**IT IS FURTHER ORDERED** that Plaintiff's motion to proceed in forma pauperis, Doc. [2], is **GRANTED**.

**IT IS FURTHER ORDERED** that, within twenty-one (21) days of the date of this Memorandum and Order, plaintiff must pay an initial partial filing fee of $79.03. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his jail registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that pursuant to Federal Rule of Civil Procedure 21, plaintiff's claims against the following defendants are **DISMISSED DUE TO IMPROPER JOINDER**: Charolette Unknown, Richard Utley, Logan Phelps, Corina Chalbach, Sheriff Stephen Korte, Tamra Lucas, Tasia Meglio, Christopher Terrell, Alan Weaver and Debby Welch.

**IT IS FURTHER ORDERED** that pursuant to Federal Rule of Civil Procedure 21, Plaintiff's claims, as against defendants Charolette Unknown, Utley, Phelps, Chalbach, Korte, Lucas, Meglio, Terrell, Weaver and Welch, are **SEVERED AND DISMISSED**:  (1) failure to protect claims; (2) deliberate indifference to serious medical needs claims; (3) claims that the Sheriff failed to answer grievances; (4) excessive force and assault and battery claims, relating to jailers and Sheriff's Department employees; (5) policy claims against Pike County Jail for failing to provide inmates notice of warrants when they are subject to be released from custody; (6) access to courts claims; (7) Sixth Amendment right to counsel claims; (8) unlawful conditions of confinement claims; and (9) due process and equal protection claims.

**IT IS FURTHER ORDERED** that Plaintiff's claims against defendants Alex Ellison, Milan Berry, Robert Embly, Conor Martin, Steve Kolthoff and William Harrison in their official capacities, are **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim.

**IT IS FURTHER ORDERED** that Plaintiff's claims against defendant Pike County are **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim.

**IT IS FURTHER ORDERED** that Plaintiff's claims against defendants Corey Anderson, Rebecca Lawson, Amy Kerr, Falisha Beaudreau and Blake Sutton, in their individual capacities, are **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that the following claims are **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim:  (1) claims for false arrest/false imprisonment relating to June 20, 2022; (2) claims for false arrest false imprisonment relating to the events at the end of June 2022/beginning of July 2022; (3) claims for unlawful search on August 9, 2022; (4) claims for relation under the First Amendment purportedly by Officer Embly and the Pike County Crew; (5) claims against defendant Prosecutor Ellison; (6) claims against Judges Berry and/or Flynn; (7) claims for intentional infliction of emotional distress and conspiracy under Missouri State law; (8) claims for freedom of speech/expression; (9) claims for conspiracy under 42 U.S.C. § 1983; and (10) claims for equal protection.

**IT IS FURTHER ORDERED** that any state law claims related to those being dismissed for failure to state a claim, are **DISMISSED** pursuant to 28 U.S.C. § 1367(c).

**IT IS FURTHER ORDERED** that defendants John Doe I, II and III are **DISMISSED**, without prejudice, with leave to properly name these individuals upon reopening the case at a later time.

**IT IS FURTHER ORDERED** that Plaintiff's motion for appointment of counsel, Doc. [6], is **DENIED** at this time.

**IT IS FURTHER ORDERED** that Plaintiff's requests for injunctive relief, Docs. [4] and [5] are **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's claims for false arrest and false imprisonment relating to the arrests that occurred on June 25, June 29 and August 9, 2022, brought against defendants Robert Embly, Conor Martin, Steve Kolthoff and Will Harrison, are **STAYED** pending final disposition of the appellate proceedings and post-conviction proceedings against plaintiff relating to his criminal case of *State v. Cook*, No. 23RL-CR00144 (10th Jud. Cir., Ralls County Court).

**IT IS FURTHER ORDERED** that Plaintiff shall notify the Court in writing concerning the final disposition of the criminal charges pending against him in *State v. Cook,* No. 23RL-CR00144 (10th Jud. Cir., Ralls County Court).

**IT IS FURTHER ORDERED** that this case is **ADMINISTRATIVELY CLOSED** pending final disposition of the appellate proceedings and post-conviction proceedings related to the criminal

charges pending against plaintiff in *State v. Cook*, No. 23RL-CR00144 (10th Jud. Cir., Ralls County Court).  This case may be reopened by Plaintiff's filing of a motion to reopen the case after such final disposition.

       **IT IS FURTHER ORDERED** that an appeal of this Order would not be taken in good faith.

       An Order of Partial Dismissal shall accompany this Memorandum and Order.

       Dated this 21st day of March, 2024.

                                 SARAH E. PITLYK
                                 UNITED STATES DISTRICT JUDGE